# UNITED STATES DISTRICT COURT
# DISTRICT OF MINNESOTA

| | |
|---|---|
| **United States of America,** | **Criminal No. 06-356 (MJD-JJG)** |
| Plaintiff, | |
| v. | **REPORT AND RECOMMENDATION** |
| **Billy Jean Love,** | |
| Defendant. | |

JEANNE J. GRAHAM, United States Magistrate Judge

The above-entitled matter came on for hearing before the undersigned Magistrate Judge of the District Court on November 27, 2006 for resolution of criminal pretrial motions. Tracy T. Braun, Assistant United States Attorney, appeared on behalf of the Government. Reynaldo A. Aligada, Jr., Assistant Federal Defender, and Katherian D. Roe, Federal Defender, appeared on behalf of Mr. Love (Love).

Love advances two separate motions to suppress. Through a motion to suppress evidence from a search and seizure (Doc. No. 14), Love asserts that his arrest was not supported by probable cause, and so evidence seized after his arrest should be suppressed. Through a motion to suppress statements (Doc. No. 15), Love argues that officers took a statement from him in violation of his privilege against self-incrimination. These motions are referred for a report and recommendation in accordance with 28 U.S.C. § 636 and Local Rule 72.1(c).

## I.    BACKGROUND

This prosecution arises out of a robbery at a TCF Bank on the afternoon of October 10, 2006. At approximately 1:30 p.m., a police dispatcher broadcast a description of the suspect, described as a tall,

stocky black man wearing a black coat and carrying a plastic bag. Officer James Zumbro of the St. Paul Police Department, who was dressed in plainclothes and driving in an unmarked squad car, received the dispatch. He responded by driving to downtown St. Paul, proceeding westbound on Kellogg Boulevard.

Near the intersection of Kellogg Boulevard and Robert Street, Zumbro saw a man matching the description of the suspect. This person was walking eastbound on the northern sidewalk, next to the westbound lanes of Kellogg Boulevard. Zumbro noticed that, as he was driving by, the person was looking around and back over his shoulder.

Zumbro turned around and went the wrong way, heading back eastbound on the westbound lanes of Kellogg Boulevard. He approached in his squad and drove to within three to four feet of the person. Rolling down the window of the squad, Zumbro displayed his identification, announced "St. Paul Police," and asked the person if he would speak with him. While Zumbro was asking this question, the person turned and ran northbound up Robert Street.

Zumbro turned north on Robert Street and parked his squad. He began chasing the person on foot, advising a police dispatcher of the route of pursuit. Zumbro also started shouting at the person, saying "St. Paul Police" and ordering the person to stop.

According to Zumbro, the person entered a building at 111 Kellogg Boulevard, on the intersection of Kellogg Boulevard and Robert Street, and ran through first floor area. The person left the building through the north exit, which faces Fourth Avenue. During this stage of the pursuit, Zumbro saw bundles of money dangling out of the plastic bag.

As they were entering a building on the opposite side of Fourth Avenue, the person turned toward Zumbro, swore at him and attempted to punch him. They ascended an escalator and bundles of money began falling out of the plastic bag. On reaching the second floor, the person turned and entered a skyway, which led south back across Fourth Avenue. The skyway provided access to a parking ramp attached to 111 Kellogg Boulevard. The person went into the ramp and attempted to hide. Zumbro followed and spotted the person behind a large ventilation duct.

Because Zumbro was unable to see the person's hands, which were behind the duct, Zumbro pointed his gun and ordered the person to show his hands. Around this time, other officers with the St. Paul Police Department arrived on the scene. The person showed the officers one hand but did not fully comply. Using tasers and chemical spray, the officers forced the person to comply, and then placed the person in handcuffs.

In subsequent searches, officers retrieved an identification showing that the person was Billie Jean Love, the defendant in this matter. They also found a ransom note and a toy gun that resembled a handgun. The plastic bag was opened and officers found additional bundles of money.

Officer Patrick Daly and other officers helped move Love to a squad car. According to Daly, Love was then approached by Officer Rondell Townsend. Recognizing Love, Townsend either said "What's going on?" or "What's up, Willie?" Love answered by repeatedly stating he had not done anything wrong. Daly countered by saying robbing a bank was wrong. Love responded that a man in a blue Cadillac had threatened him and forced him to rob the bank.

## II.   DISCUSSION

### A.   Probable Cause to Arrest

Love generally argues that officers did not have probable cause to arrest him, and as a result, it is appropriate to suppress evidence seized after the arrest. He has not specifically raised any issues other than the existence of probable cause.

Consistent with the Fourth Amendment, an officer may not arrest a person without a warrant unless that officer has probable cause to do so. Probable cause exists where, according to the facts and circumstances known to law enforcement at the time of arrest, a prudent person would believe that a suspect had committed or is committing a crime. *United States v. Adams*, 346 F.3d 1165, 1169 (8th Cir. 2003).

Because probable cause is founded on facts and circumstances known to law enforcement at the time of arrest, this Court must first determine when the arrest took place. A police encounter is an arrest, for the purposes of the Fourth Amendment, when a person is seized. *United States v. Carpenter*, 462 F.3d 981, 985 (8th Cir. 2006).

A seizure occurs when officers cause a person to submit to lawful authority, either through a show of authority or through application of physical force. *United States v. Pratt*, 355 F.3d 1119, 1122 (8th Cir. 2004). To determine whether a seizure occurs under this standard, a court considers whether a reasonable person, in circumstances like those faced by the defendant, would not feel free to end the encounter and leave. *United States v. Vera*, 457 F.3d 831, 834-35 (8th Cir. 2006). Where an officer approaches a person in a public setting, and only asks that person to answer questions, the encounter is

consensual and does not constitute a seizure. *United States v. Angulo-Guerrero*, 328 F.3d 449, 451 (8th Cir. 2003).

Eighth Circuit case illustrate various circumstances that constitute a consensual encounter rather than a seizure. Where two officers parked their squad car across the street from the defendant, and shouted several questions at the defendant before he fled, the defendant was not seized. *United States v. Richardson*, 427 F.3d 1128, 1130, 1132 (8th Cir. 2005), *overruled on other grounds*, 438 F.3d 421 (8th Cir. 2006). And no seizure occurred when two plainclothes officers approached the defendant on the street, identified themselves, and asked several questions about drug trafficking. *United States v. Woods*, 213 F.3d 1021, 1022 (8th Cir. 2000). Notwithstanding the nature of a police encounter, however, a person fleeing from police custody is not seized. *United States v. Taylor*, 462 F.3d 1023, 1026 (8th Cir. 2006).

At the beginning of their encounter, Love was approached by Zumbro, a plainclothes officer in an unmarked squad car. But Zumbro did not resort to physical force. The only evident means by which Zumbro indicated his authority, aside from showing his identification and stating that he was with St. Paul police, was by driving the wrong way in traffic. This event, though alarming, would not by itself indicate to a reasonable person that she or he is unable to end a police encounter. This Court concludes that the initial encounter was not a seizure, and that Love was not seized until he was apprehended inside the parking ramp.

Based on this conclusion, the remaining question is whether officers had probable cause to arrest. Here Love matched the general description of a bank robbery suspect. He fled when officers attempted to question him, and during the ensuing chase, he dropped several bundles of cash. These circumstances

support a reasonable belief that Love had committed a bank robbery, and as a result, officers had probable cause to arrest him. *See United States v. Spivey*, 51 Fed.Appx. 188, 189 (8th Cir. 2002).

### B. Privilege Against Self-Incrimination

Love argues that when officers spoke to him following his arrest, his responses were taken in violation of the privilege against self-incrimination.[1] This Fifth Amendment privilege requires that a suspect, once taken into police custody, shall receive a *Miranda* warning before being subject to police interrogation. *United States v. Head*, 407 F.3d 925, 928 (8th Cir. 2005). The parties here do not contest that, when Love made his statements, he was in custody and had not received a *Miranda* warning. So the sole issue is whether the officers' actions constituted an interrogation.

Police actions constitute interrogation when an officer engages in express questioning or its functional equivalent. This standard incorporates words or actions by police, other than those normally incident to custody, that police know are likely to result in an incriminating response. *Rhode Island v. Innis*, 446 U.S. 291, 300-01 (1980). Small, polite exchanges between an officer and the defendant are not equivalent to express questioning. *United States v. Tail*, 459 F.3d 854, 857-58 (8th Cir. 2006).

---

[1] At the motion hearing, this Court received evidence about an interview of Love by federal agents on October 12, 2006, two days after the incident. Love did not give notice of his intent to seek suppression this statement in his original motion to suppress statements, nor has he done so in his supplemental memorandum following motion hearing. A defendant has the burden to state the basis for a motion to suppress with reasonable specificity. *United States v. Starks*, 193 F.R.D. 624, 626-27 (D.Minn. 2000). Because Love has not placed the October 12 interview into dispute, it does not require a ruling from this Court.

When Townsend first spoke to Love, his question was a simple greeting, not an inquiry about any crime Love allegedly committed. The initial question by Townsend, therefore, was not the sort of express questioning to which the privilege of self-incrimination attaches.

However, Love went on to say that he had not done anything wrong, and Daly replied that robbing a bank was wrong. This comment amounted to an accusation that Love had committed a bank robbery, and under the circumstances, Daly had reason to know that this comment would elicit an incriminating response. And the ensuing comment by Love was not a spontaneous utterance, but instead was a direct answer to the preceding accusation.

Because Daly engaged in the functional equivalent of interrogation before Love received a *Miranda* warning, there was a violation of the privilege against self-incrimination and the ensuing statement is appropriately suppressed.

### III.   CONCLUSION

Love argues that, because officers lacked probable cause to arrest Love, evidence seized after his arrest must be suppressed. Because this Court concludes there was probable cause, the evidence need not be suppressed for this reason, and so the motion to suppress evidence from a search and seizure is appropriately denied.

In the conversation following his arrest, Townsend made a greeting that was not express questioning, but Daly made a response that was. Because Love answered and had not previously received a *Miranda* warning, this response violated his privilege against self-incrimination, and his motion to suppress statements is appropriately granted in part and denied in part.

## IV.   RECOMMENDATION

Being duly advised of all the files, records, and proceedings herein, **IT IS HEREBY RECOMMENDED THAT:**

1. Love's motion to suppress evidence from a search and seizure (Doc. No. 14) be **DENIED.**

2. Love's motion to suppress statements (Doc. No. 15) be **GRANTED IN PART AND DENIED IN PART.**

3. When Love made statements following his arrest, those in response to the greeting by Townsend are admissible at trial, but those in response to the comment by Daly are suppressed.

Dated this 7th day of December, 2006.                    s/Jeanne J. Graham

                                                                                JEANNE J. GRAHAM
                                                                                United States Magistrate Judge

### NOTICE

Pursuant to Local Rule 72.2(b), any party may object to this report and recommendation by filing and serving specific, written objections by December 27, 2006. A party may respond to the objections within ten days after service thereof. Any objections or responses filed under this rule shall not exceed 3,500 words. The district court judge shall make a de novo determination of those portions to which objection is made. Failure to comply with this procedure shall forfeit review in the United States Court of Appeals for the Eighth Circuit. Unless the parties are prepared to stipulate that the district court judge is not required by 28 U.S.C. § 636 to review a transcript of the hearing in order to resolve all objections made to this report and recommendation, the party making the objections shall timely order and cause to be filed within ten days a complete transcript of the hearing.